# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| DEXAS INTERNATIONAL, LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION No. 6:07cv396 |
| OFFFICE MAX INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the claims provided in U.S. Patent Nos. D475,748 ("the '748 patent"), D474,599 ("the '599 patent"), and D510,389 ("the '389 patent") (collectively, "patents-in-suit" or "asserted patents"). Plaintiff Dexas International, Ltd. ("Dexas") accuses Defendant OfficeMax Inc. of infringing the asserted patents. On October 9, 2008 Plaintiff filed a Motion for Claim Construction and Brief In Support Thereof ("Motion") setting forth proposed constructions for the claims of the asserted patents. (Doc. No. 45). On December 15, 2008 Defendant filed a Brief In Response to Motion for Claim Construction ("Resp.") arguing that more detailed constructions than those proposed by Plaintiff are necessary. On January 2, 2009 Plaintiff filed a Reply to its Claim Construction Brief ("Reply"). (Doc. No. 61). On January 8, 2009 the Court held a hearing to construe the claims of the patents-in-suit. At the hearing, the parties disputed whether, pursuant to the Federal Circuit's holding in *Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), a detailed verbal claim construction would assist the trier of fact under the ordinary observer test. For the reasons set forth herein, the Court hereby adopts the claim constructions outlined below for the '599, '748, and '389 patents.

## OVERVIEW OF THE PATENTS

The three patents involved in this case are design patents. The '748 patent, entitled "CLIPCASE," claims "[t]he ornamental design for a 'clipcase,' as shown and described." Seven (7) figures are also provided with seven different views of the CLIPCASE.[1] MOTION, EX. A. The '599 patent, entitled "SLIM CASE," similarly claims "[t]he ornamental design for a slim case, as shown and described." Seven (7) figures are provided, each showing a different view of the SLIM CASE. MOTION, EX. B. Finally, the '389 patent, entitled "DOCUMENT CASE," claims "[t]he ornamental design for a 'document case,' as shown and described." Seven (7) figures are provided, each showing a different view of the DOCUMENT CASE. MOTION, EX. C.

All three asserted patents depict a storage container approximating the dimensions and appearance of a clipboard. The storage container opens to provide space for documents and other stationery tools. The CLIPCASE of the '748 patent includes a clip to secure documents to its exterior surface, but does not feature a cutout that can serve as a handle. The CLIPCASE also features a hinge on the back side of the case. The SLIM CASE of the '599 patent does not have a clip to secure documents to its exterior surface, but features a cutout near the front of the board that presumably serves as a handle for carrying the object. Like the CLIPCASE of the '748 patent, the SLIM CASE of the '599 patent features a hinge on the back side of the case. The DOCUMENT CASE of the '389 patent includes a clip to secure documents to its exterior

---

[1] The Court will refer to specific pieces of a design, such as the front, back, side, top, and bottom, in accordance with the views that have been established by the two patents. For both patents, the views are described as follows: Fig. 1 is a perspective view; Fig. 2 is a front view; Fig. 3 is a back view; Fig. 4 is a side view; Fig. 5 is a side view similar to Fig. 4 except rotated 180 degrees; Fig. 6 is a top view; and Fig. 7 is a bottom view.

surface, but does not feature a cutout that can serve as a handle. The DOCUMENT CASE of the '389 patent features a hinge on the side of the case.

## **LEGAL STANDARD**

A design patent is fundamentally different from a utility patent, but in some areas, the law pertaining to each overlaps. For example, although the respective tests for infringement are different, both types of patents require the district courts to conduct claim construction proceedings. *Egyptian Goddess*, 543 F.3d at 679 (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (design patents); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech.*, 521 F.3d 1351 (Fed. Cir. 2008)) (utility patents).

A design patent protects the novel, non-functional aspects of a claimed ornamental design. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The figures in design patent not only comprise the bulk of the disclosure, but also set forth the limits of the claim. *See Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) ("A design patent contains no written description; the drawings are the claims to the patented subject matter."). Design patents are limited to what is depicted in the drawings and therefore have almost no scope. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988).

In September 2008, the Federal Circuit issued an opinion in *Egyptian Goddess, Inc. v. Swisa, Inc.*, setting forth new rules for both claim construction and infringement analyses in design patent cases. With respect to claim construction, the Federal Circuit noted that although trial courts have had a duty to conduct claim construction in design patent cases, no particular form has been prescribed. *Id.* at 679. Thus, although trial courts in such cases have generally issued detailed verbal descriptions of the claimed designs, the Federal Circuit has never required such constructions. *Id.*

Noting the difficulties involved in describing a design in words, the Federal Circuit held that the "preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design," and in deciding whether a verbal description is appropriate, the Court noted that trial courts should recognize the "risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id.* at 679–680. Further, the Court noted:

> While it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out . . . various features of the claimed design as they relate to the accused design and the prior art. . . . [A] trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim. Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines; assessing and describing the effect of any representations that may have been made in the course of the prosecution history; and distinguishing between those features of the claimed design that are ornamental and those that are purely functional.

*Id.* (internal citations and quotations omitted). Finally, the Court added that a trial court's "decision to issue a relatively detailed claim construction will not be reversible error" absent a showing of prejudice because "the level of detail to be used in describing the claimed design is a matter within the court's discretion." *Id.* at 679.

Therefore when a trial court determines that a detailed verbal description of the claimed design is appropriate, such a construction involves an "additional level of abstraction" that is not required when construing the claims of a utility patent. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). This abstraction results from a lack of a written description in design patents; the court is presented with only visual images of the claimed subject matter. *Id.*

4

In this regard, the "properly construed the scope of the claimed invention [should be the] overall ornamental visual impression [of the design], rather than ... the broader general design concept," *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2000) (quoting *OddzOn Products, Inc.*, 122 F.3d at 1405) (internal quotations omitted), thus, evoking the "visual image of the design." *Durling*, 101 F.3d at 103 n.2.

Ordinarily, functional aspects of a design cannot be claimed. *OddzOn Products, Inc.*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Functional design elements can be claimed, however, when they serve a primarily ornamental purpose, *e.g.,* in circumstances where there are several ways to achieve the underlying function. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). The determination of "[w]hether a patented design is functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

## **DISCUSSION**

The parties dispute the proper claim construction for the three patents. The parties also dispute the level of detail appropriate for a proper construction of the claims of the asserted patents. The parties do not dispute that claim construction is a legal determination exclusively within the province of the Court.

**I.     The '748 Patent**

Plaintiff favors a general description which points to the figures in the patent. MOTION at 8–9. Plaintiff proposes the following claim construction for the '748 patent:

> A clipboard adapted to hold documents of a certain design, as shown in Figures 1–7.

MOTION at 9. Plaintiff argues that Defendant's proposed construction is "clearly against the advice of the Federal Circuit in *Egyptian Goddess*" because it is unnecessarily detailed. REPLY at 2. Plaintiff further argues that all of Defendant's arguments regarding the patentee's use of solid lines—as opposed to broken lines—are irrelevant to claim construction. *Id.* at 3–6.

Defendant argues that Plaintiff's proposed construction fails to describe important features of the design that make it "appropriate for the Court to put into words the several design elements shown in the various drawings." RESP. at 5. Pointing to this Court's claim construction order (Doc. No. 112) in *Dexas Int'l, Ltd. v. Tung Yung Int'l, Inc.*, No. 6:07-cv-334, 2008 WL 4831348 (E.D. Tex. June 24, 2008), Defendant argues that the following construction for the '748 patent should be adopted:

> The ornamental design for a "CLIPCASE" as shown in solid lines of the patent drawings, comprising:
> 1. A generally rectangular slim box with a top portion (*see* Fig. 6), a bottom portion (*see* Fig. 7), a front edge (*see* Fig. 2), a back edge (*see* Fig. 3), and two side edges (*see* Figs. 4, 5);
> 2. A top surface that is generally flat and parallel to the bottom surface that is also generally flat (*see* Figs. 4, 6, 7);
> 3. Four curved corners identical in curvature, size, and shape (*see* Figs. 1, 6, 7);
> 4. A clip assembly located on the top surface and adjacent to the back edge, with a visible back plate, spring housing, clip, and two circular rivets (*see* Figs. 1, 6);
> 5. A clasp assembly located along the center region of the front edge, containing a U-shaped piece and a trapezoidal-shaped piece, bordered on each side by multiple vertical fins (*see* Figs. 1, 2);
> 6. A hinge assembly located along the back edge, whole hinge members are decorated by protrusions and indentations (*see* Fig. 3); and

7. Along each of the four edges that form the generally rectangular slim box, the top and bottom portions are curved (*see* Figs. 1, 2, 3, 4).

RESP. at 6–7.

As previously noted, the Federal Circuit's opinion in *Egyptian Goddess* cautioned against attempts to "construe" design patents by providing detailed verbal descriptions, calling such constructions "unwise." 543 F.3d at 679–80. The Court noted that "a design is better represented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration." *Id.* (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)) (internal quotations omitted). Here, the asserted patents disclose designs for different storage cases approximating the shape and dimensions of a clipboard. Each patent discloses a single design claim comprised of seven figures, each depicting a different perspective view.

In accordance with *Egyptian Goddess*, the Court finds that the claimed designs are better represented by the seven illustrations contained in each patent they could be by a verbal description. 543 F.3d at 679; *see also* MPEP § 1503.01 ("No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description.").[2] The risks of undertaking such a description substantially outweigh the potential benefits in this case. The claimed designs for storage cases are relatively uncomplicated, straightforward, and well-represented by the images contained in the asserted patents. The Court is not convinced that pointing out certain features of the claimed designs through detailed verbal constructions would assist the jury in this case; the features of the claimed designs are clearly disclosed within the figures contained in the asserted patents.

---

[2]Befittingly, a picture may be worth a thousand words.

Properly instructed, the jury should be able to discern the similarities and differences between the claimed designs and the accused products.

To provide a detailed verbal description as Defendant solicits would entail a significant risk that the jury would place undue emphasis on particular features of the claimed designs or otherwise focus on distinct features rather than on the designs as a whole. *See Egyptian Goddess*, 543 F.3d at 677 ("the proper inquiry [is] . . . whether the accused design has appropriated the claimed design as a whole"). Pointing out such features could easily result in a claim construction akin to a determination of points of novelty—a prong of the infringement analysis for design patent infringement which was specifically discarded by the Federal Circuit in *Egyptian Goddess*. 543 F.3d at 678 (holding that points of novelty test should no longer be a part of the analysis in design patent infringement cases and noting that the preferable way "to cabin unduly broad assertions of design patent scope . . . is to do so directly, by relying on the ordinary observer test, conducted in light of the prior art"). Moreover, the Court may guide the jury by addressing issues of broken lines in design patent drafting; the proper role of prosecution history; and the distinction between ornamental and functional features, among other issues, when instructing the jury. *See id.* at 680 (listing methods of guiding the jury, aside from providing a detailed verbal description).

Defendant argues that *Egyptian Goddess* counsels in favor of a verbal description in this case because "the Federal Circuit in effect provided a written description of the drawings in its infringement analysis, describing in detail the multiple elements shown in the drawings, and determining that the accused device did or did not incorporate those features." RESP. at 4. Defendant goes on to argue:

> In the instant case, there are several features that the patented design illustrates as departing from the prior art and, because of that, it is appropriate for the Court to put into words the several design elements shown in the various drawings. To do otherwise would leave the jury with no direction in analyzing the seven (7) drawings of each of the patents that show multiple features.

*Id.* However, these arguments all lack merit. First, neither party has cited any prior art for any purpose, and therefore, whether there are several features that the patented designs illustrate as departing from the prior art cannot be the basis for requiring a detailed verbal claim construction.[3] Moreover, the prior art is particularly relevant to the ordinary observer analysis, as it sets the frame of reference for the infringement determination, and thus any asserted departures from the prior art will be relevant when that issue is before the Court. *Egyptian Goddess*, 543 F.3d at 678 ("when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art . . . . [and] differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art").

Second, the Court is required to construe the claims of a design patent. *Id.*, 543 F.3d at 679 ("trial courts have a duty to conduct claim construction in design patent cases"). The main issue currently before the Court is how detailed—verbally or otherwise—these constructions should be in light of *Egyptian Goddess*. Therefore, a jury will not only have direction from the Court's order construing the claims, but also from the Court's instructions to the jury at the end of trial.

---

[3] Additionally, even if Defendant had cited prior art in support of this argument, it would be a non-sequitur because whether the patented designs have features that depart from the prior art has no bearing on how to properly construe the claimed designs. Further, this argument resonates heavily with respect to points of novelty—a test for infringement which was recently discarded by the Federal Circuit in *Egyptian Goddess*, as previously noted.

At the *Markman* hearing, Defendant reiterated its argument regarding the Federal Circuit's infringement analysis in *Egyptian Goddess* providing "in effect" written descriptions of the drawings, with a few modifications. There, Defendant argued that this Court should provide verbal detailed constructions as Defendant proposed because, when ruling on the issue of infringement in a motion for summary judgment, the Court will be required to set forth a decision which, "in effect," provides detailed verbal written descriptions of the drawings. Further, Defendant argued that for the purposes of a permanent injunction, the Court would similarly have to set forth detailed verbal written descriptions of the drawings. Thus, Defendant submits that a detailed verbal claim construction should be set forth here in order to assist in these later stages of the litigation.

As Plaintiff pointed out at the hearing, this argument merely causes unnecessary confusion. This Court has a duty to conduct claim construction. *Egyptian Goddess*, 543 F.3d at 679. Prior to *Egyptian Goddess*, the Federal Circuit did not require detailed verbal constructions in design patent cases, though this may have been the prevailing practice. *Id.* In *Egyptian Goddess*, the Federal Circuit explicitly held that the "preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* Defendant's arguments regarding ruling on a motion for summary judgment and issuing a permanent injunction essentially boil down to the assertion that because the Court will have to analyze the asserted patents at some point—absent settlement—and issue a detailed written order thereon, the Court should issue a detailed verbal claim construction now as a means of front-loading the work.

While it is easy to intermingle the issues of claim construction and infringement, the distinction must be made. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,

425 F.3d 1366, 1373 (Fed. Cir. 2005). Claim construction is the matter currently before the Court. The purpose of claim construction is to resolve disputes between the parties regarding the proper scope of disputed claim terms by "assign[ing] a fixed, unambiguous, legally operative meaning to the claim." *Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004). Thus, a proper claim construction necessarily precedes a determination whether the claims read on the accused product—whether the accused product infringes. *See e.g. SmithKline Diagnostics, Inc. v. Helena Labs.*, 859 F.2d 878, 882, 885 (Fed. Cir. 1989) (recognizing that proper claim construction is required for infringement and invalidity determination and an improper claim construction will distort the remainder of the process). Thus the issue currently before the Court—claim construction—will be addressed as such, leaving issues of infringement and injunction for those later stages of the litigation. Fully addressing claim construction at this stage does not require a detailed verbal claim construction for all the reasons previously noted.

In *Egyptian Goddess*, the Federal Circuit specifically set forth that ordinarily the preferable course for construing design patent claims is not to attempt to set forth a detailed verbal description of the claims. 543 F.3d at 679. If this Court were to accept Defendant's arguments regarding the importance of a detailed verbal claim construction for summary judgment, it would be directly in contravention to the main thrust of *Egyptian Goddess*. When the time comes for dispositive motions to be filed, the Court will look at the properly construed claims and go through a proper infringement analysis before issuing a detailed written order setting forth the Court's conclusions. Issuing a proper claim construction at this point does not require a detailed verbal claim construction, but requires a construction which is sufficiently detailed to appropriately guide the jury without placing undue emphasis on particular features. *Id.* at 679–80. The Court has already determined that

a detailed written claim construction is neither necessary nor helpful in the instant action and such a construction would entail a significant risk of placing undue emphasis on particular features of the patented designs.

Finally, Defendant argues that a detailed verbal claim construction is required in order to assist Defendant's counsel in properly advising his client. This Court's duty is to resolve disputes between the parties, and with regard to claim construction, this Court is under an obligation to conduct claim construction proceedings. *Egyptian Goddess*, 543 F.3d at 679. However, a detailed verbal claim construction is not necessary in order to assist counsel in advising his client. Rather, by determining—for the reasons discussed above—that a detailed verbal claim construction is not necessary, the Court is assisting counsel by this ruling. For all the foregoing reasons, the Court declines Defendant's invitation to adopt a detailed verbal claim construction.

In light of these conclusions, the Court adopts the following construction for the '748 patent:

> A clipboard adapted to hold documents of a certain design, as shown in Figures 1–7.

This construction will represent to the jury the overall visual impression of the claimed design; it notes the general nature of the design while specifically directing the jurors to observe all seven figures contained in the patent.[4]

## II. The '599 Patent

As with the '748 patent, Plaintiff favors a general description and proposes the following claim construction for the '599 patent: "a clipboard adapted to hold documents of a certain design,

---

[4] While the Court adopts the aforementioned construction, the Court expresses no opinion as to whether the patented design incorporates functional elements. *See PHG Techs.*, 469 F.3d at 1365 ("Whether a patented design is functional or ornamental is a question of fact.").

as shown in Figures 1–7." MOTION at 9. Plaintiff argues that its proposed construction provides the proper overall visual impression of the ornamental features of the patented design. MOTION at 13. Here, Plaintiff similarly argues that Defendant's proposed construction for the '599 patent is too detailed, in contravention to the Federal Circuit's decision in *Egyptian Goddess*. REPLY at 1–3.

As with the '748 patent, Defendant's proposed construction for the '599 patent mirrors the construction adopted by this Court in *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.* Defendant thus proposes the following claim construction for the '599 patent:

> The ornamental design for a "SLIM CASE" as shown in solid lines of the patent drawings, comprising:
> 1. A generally rectangular slim box with a top portion (*see* Fig. 6), a bottom portion (*see* Fig. 7), a front edge (*see* Fig. 2), a back edge (*see* Fig. 3), and two side edges (*see* Figs 4–5);
> 2. A top surface that is generally flat, but angled at a slope so that it is not parallel to the bottom surface that is also generally flat (*see* Figs. 4, 6, 7);
> 3. Curved corners that are larger along the front edge compared to those along the back edge (*see* Figs. 1, 6, 7);
> 4. A curved handle opening located adjacent to the front edge generally in the shape of an oval (*see* Figs 1, 6, 7);
> 5. A clasp assembly located along the center region of the front edge, flush with the front edge, and contains multiple horizontal fins affixed to a rectangular-shaped piece that is bordered on each side by multiple vertical fins (*see* Figs. 2, 4, 6);
> 6. A hinge assembly located along the back edge, whole hinge members are decorated by fins, protrusions, and indentations (*see* Fig. 3); and
> 7. A center piece along the perimeter of the generally rectangular slim box that protrudes outward from the edges of said box (*see* Figs. 1, 2, 3, 4).

RESP. at 5–6.

Plaintiff proposes a construction which describes this design as a "clipboard adapted to hold documents of a certain design. Yet, this design lacks a clip or other means for securing documents to the outside of the case—a key element of a clipboard. The Court finds that this design is more accurately described as a "document storage case adapted to hold documents of a certain design."

Incorporating the discussion from section I, *supra*, and for all the foregoing reasons, the Court hereby adopts the following claim construction for the '599 patent:

> A document storage case adapted to hold documents of a certain design, as shown in Figures 1–7.

This construction will represent to the jury the overall visual impression of the claimed design; it notes the general nature of the design while specifically directing the jurors to observe all seven figures contained in the patent.

### III. The '389 Patent

As with the '748 and '599 patents, Plaintiff favors a general description and proposes the following claim construction for the '389 patent: "a clipboard adapted to hold documents of a certain design, as shown in Figures 1–7." MOTION at 9. Plaintiff argues that its proposed construction provides the proper overall visual impression of the ornamental features of the patented design. MOTION at 13.

Unlike the '599 and '748 patents, the '389 patent was not involved in the *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.* case. Nonetheless, Defendant's proposed construction for the '389 patent is noticeably similar. Defendant proposes the following construction for the '389 patent:

> The ornamental design for a "DOCUMENT CASE" as shown in solid lines of the patent drawings, comprising:
> 1.    A generally rectangular slim box with a top portion (*see* Fig. 6), a bottom portion (*see* Fig. 7), a front edge (*see* Fig. 2), a

  back edge (*see* Fig. 3), and two side edges (*see* Figs. 4–5), each edge is substantially flat, except for one side edge that is curved towards the center (*see* Figs. 1, 6, 7);
2. A top surface that is generally flat and parallel to the bottom surface that is also generally flat (*see* Figs. 4, 6, 7);
3. Four curved corners identical in curvature, size, and shape (*see* Figs. 1, 6, 7);
4. A clip assembly located on the top surface and adjacent to the back edge, with a visible back plate, spring housing, clip, and two circular rivets (*see* Figs. 1,6);
5. A clasp assembly located along the center region of a side edge having multiple horizontal fins affixed to a rectangular-shaped piece that is bordered on each side by multiple vertical fins (*see* Figs. 2, 4, 6);
6. A hinge assembly located along the other side edge being a large rectangular-shaped piece having a series of indentations, spaced in equal number toward the top and bottom edges close to the two side edges of the rectangle (*see* Fig. 3); and
7. Along each of the four edges that form the generally rectangular slim box, the top and bottom portions are curved (*see* Figs. 1, 2, 3, 4).

RESP. at 7–8.

Incorporating the discussion from sections I and II, *supra*, and for all the foregoing reasons, the Court hereby adopts the following claim construction for the '389 patent:

> A clipboard adapted to hold documents of a certain design, as shown in Figures 1–7.

Like the '748 and '599 patents, this construction will represent to the jury the overall visual impression of the claimed design; it notes the general nature of the design while specifically directing the jurors to observe all seven figures contained in the patent.

**IV.  The Effect of Departing from the Constructions Previously Adopted in *Dexas Int'l Ltd. v. Tung Yung Int'l (USA), Inc.***

Having concluded that detailed verbal claim constructions are not necessary or helpful in this case, the Court acknowledges that the constructions adopted herein differ from those adopted

in the related case *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.* 2008 WL 4831348, 6:07cv334 (E.D. Tex. June 24, 2008). There, the Court adopted claim constructions similar to those proposed by Defendant here for both the '748 and '599 patents. *Id.* Noting that a petition for rehearing *en banc* in *Egyptian Goddess* had been granted by the Federal Circuit, the Court noted that the parties could later file a motion for reconsideration of the claim construction opinion if the Federal Circuit's ruling provided a reasonable basis for doing so. *Id.* at 20; *see also Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.*, 6:07cv334, slip op. at 9 (E.D. Tex. Oct. 14, 2008) ("although the Magistrate Judge's Report issued prior to the Federal Circuit's decision in *Egyptian Goddess*, . . . the parties are free to file a new motion in light of *Egyptian Goddess*"). Since that time, neither party has filed a motion to that effect, and the originally adopted constructions remain intact.[5]

Having fully considered the Federal Circuit's opinion in *Egyptian Goddess*, in addition to the parties' arguments, claim constructions like those adopted in *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.* are neither necessary nor helpful in this case. Given the relationship between the two cases, the Court finds that it may be appropriate to reconsider the claim construction in *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA)*. As a result, the Court will soon request briefing from the parties on this issue in *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA)*.

## CONCLUSION

For all the foregoing reasons, the Court hereby adopts the above claim constructions for the '599, '748, and '328 patents.

---

[5]Plaintiff Dexas has, however, noted that it is "in the process of determining if and when it will file [] a motion for reconsideration" of the claim construction opinion in *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.* in light of *Egyptian Goddess*. Plaintiff's Reply to its Claim Construction Brief, *Dexas Int'l, Ltd. v. Tung Yung Int'l (USA), Inc.*, 6:07cv334, slip op. at 9 (E.D. Tex. Jan. 2, 2009).

**So ORDERED and SIGNED this 30th day of January, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE